**EXHIBIT I**

**January 14, 2026**

| | | |
|---|---|---|
| **LEVECKE CORPORATION** | ) | **NOTICE OF ASSIGNMENT FOR** |
| | ) | **THE BENEFIT OF CREDITORS** |
| | ) | **AND DEADLINE FOR** |
| | ) | **SUBMITTING CLAIMS** |
| ______________________________ | ) | |

**TO ALL CREDITORS AND EQUITYHOLDERS OF LEVECKE CORPORATION AND OTHER PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that on January 8, 2026, LeVecke Corporation ("LeVecke" or "Assignor"), a California corporation (EIN: 95-2137173) with offices at 10810 Inland Avenue, Mira Loma, California 91752, as assignor, made a General Assignment for the Benefit of Creditors (the "Assignment") to LeVecke (ABC), LLC ("Assignee"), a California limited liability company, as assignee, pursuant to California state law. The Assignment and the wind up and dissolution of Assignor previously was approved by Assignor's stockholders holding the requisite majority of the company's stock. Prior to the Assignment, a sale process and market check was pursued. After the sale process did not result in a buyer, LeVecke's senior secured creditor noticed and conducted a foreclosure sale of substantially all of LeVecke's assets used in the operation of LeVecke's business (the "Foreclosed Assets") pursuant to Article 9 of the California Commercial Code. The buyer at the foreclosure sale, LeVecke Beverage Group, LLC, is not affiliated with Assignee. Assignee understands that LeVecke Beverage Group, LLC is an entity formed to acquire the Foreclosed Assets in the foreclosure sale.

**PLEASE TAKE FURTHER NOTICE** that with the exception of the relationship created by the Assignment, and despite their similarity in name, Assignor and Assignee have no corporate affiliation to each other. A true and correct copy of the document evidencing the Assignment can be downloaded from the following website (https://levecke-abc.smartexchange.com).

**PLEASE TAKE FURTHER NOTICE** that all entities asserting any claim against Assignor must submit a proof of claim and proper supporting documentation no later than July 8, 2026 (the "Bar Date"). Claims can be filed electronically using a form located at the following landing page (https://levecke-abc.smartexchange.com). Alternatively, a statement regarding your claim and related documentation may be sent to the following address. You may include a self-addressed, stamped envelope with sufficient postage to confirm receipt:

LeVecke (ABC), LLC
c/o Claims Administration
231 Market Place, Suite 373
San Ramon, California 94583

Any claimant who fails to timely submit a claim, postmarked on or before the Bar Date, in accordance with the instructions set forth above, shall be barred from sharing in any distribution from the net liquidation proceeds, if applicable, and shall not receive any distribution from Assignee as it relates to this matter.

Dated: January 14, 2026

**BY: LeVecke (ABC), LLC**
**In its sole and limited capacity as**
**Assignee FBO Creditors of LeVecke**
**Corporation**
**231 Market Place, Suite 373**
**San Ramon, California 94583**
**United States**

LEVECKE (ABC), LLC
231 MARKET PLACE, SUITE 373
SAN RAMON, CALIFORNIA 94583

January 27, 2026

To: Stockholders of LeVecke, Inc.

Subject: Assignment for Benefit of Creditors and Stockholder Distribution

As you are aware, on January 8, 2026 the board and stockholders of LeVecke, Inc. ("Company") approved an Assignment for Benefit of Creditors ("ABC") by assigning its assets to LeVecke (ABC), LLC ("Assignee"). The Assignee has liquidated all of the Company's assets and has reviewed all claims filed in the ABC which exceed the proceeds from the liquidation of the Company's assets. You should consult with your tax advisor regarding the tax ramifications of the ABC, but there are no funds available for a distribution to stockholders of LeVecke, Inc.

If you have any questions, please contact Juan Zertuche at Juan.Zertuche@armanino.com.

Regards,

Juan Zertuche
Representative, LeVecke (ABC), LLC
in its sole and limited capacity as assignee
for the benefit of creditors of LeVecke, Inc.

# LeVecke Corporation

## Assignment for the Benefit of Creditors

Overview File A Claim My Claims Inquiries Log in

**Assignor:** LeVecke Corporation, a California Corporation
**Assignee:** LeVecke (ABC), LLC
**Assignment Date:** January 8, 2026

This website is a service provided for purposes of (i) filing a claim electronically, (ii) filing a claim in hardcopy form and (iii) accessing electronic copies of the creditor notice and assignment for the Assignor. Please fill out the claim form online or by mail to file a claim with the estate, however, making a claim does not guarantee payment by Assignee. The Assignor is incorporated in the state of California. The Assignee, a California limited liability company, is a special purpose entity established to (i) sell the assets of the Assignor, (ii) compile claims, and (iii) distribute proceeds, if any, to creditors according to the priority established. Note that with the exception of the relationship created by the Assignment, and despite their similarity in name, Assignor and Assignee have no corporate affiliation to each other.

## Claims Administrator

LeVecke (ABC), LLC
231 Market Place, Suite 373
San Ramon, CA 94583

Submit Claim Online Ask Question

## Timeline

1. General Assignment - January 8, 2026
2. Deadline to file Proof of Claim - July 8, 2026

## Documents

Creditor Notice [PDF]

Online Proof of Claim [Submit Claim Online]

Form & Instructions for Proof of Claim By Mail [PDF]

General Assignment (Executed) [PDF]

Frequently Asked Questions [PDF]

Equity Write-Off Letter [PDF]

## Claims

Any person or entity asserting any claim against the Assignor must submit a proof of claim and proper supporting documentation no later than July 8, 2026. Proof of Claim may be submitted here online, or by mail in accordance with the instructions set forth in the Creditor Notice. Any claimant who fails to timely submit a proof of claim in accordance with the instructions set forth in the Creditor Notice shall be barred from sharing in any distribution of proceeds of the liquidation of the Assets of Assignor and shall not receive any payment from the Assignee.

## FREQUENTLY ASKED QUESTIONS

**Q: What is an Assignment for the Benefit of Creditors (ABC)?**
A: An ABC is a state-law insolvency process in which a company (the assignor) transfers its assets to a neutral third party (the assignee) to liquidate those assets and distribute proceeds to creditors.

**Q: How does an ABC differ from bankruptcy?**
A: An ABC is typically faster, less expensive, and more flexible than a federal bankruptcy proceeding and generally occurs without court supervision. Unlike bankruptcy, an ABC does not impose an automatic stay on creditor actions.

**Q: When did LeVecke enter into the ABC?**
A: LeVecke Corporation executed the ABC on January 8, 2026. A formal notice and claim form are being distributed to creditors.

**Q: Who is the assignee in this matter?**
A: The assignee is the fiduciary appointed by Levecke Corporation to administer and liquidate the assets for the benefit of creditors, for this particular matter LeVecke (ABC), LLC is the Assignee for the Benefit of Creditors (the "Assignee") of LeVecke Corporation (the "Assignor"). The Assignee is an independent fiduciary and is not affiliated with the Assignor apart from the assignment itself.

**Q: What role does the assignee play?**
A: The assignee oversees the collection, liquidation, and distribution of assets in accordance with California law and the assignment agreement.

**Q: Why did Levecke Corporation make an assignment?**
A: The company chose an ABC as an orderly and cost-effective liquidation process.

**Q: What Happened to LeVecke's business prior to the ABC?**
A: Prior to the ABC, and but after a marketing process did not result in an acceptable offer, a secured creditor
exercised its rights under Article 9 of the California Commercial Code to conduct a foreclosure sale of the assets used in LeVecke's operations.

**Q: Who conducted the Article 9 sale?**
A: The Article 9 foreclosure sale was noticed and conducted by Levecke Corporation's senior secured creditor (the "Secured Party"). The Assignee did not conduct that sale.

**Q: How does the foreclosure sale affect the ABC estate?**
A: Assets sold by the secured creditor are not part of the ABC estate .

**Q: Will creditors receive distributions?**
A: Distributions depend on whether the ABC estate generates net proceeds after liquidation costs and priority claims.

## FREQUENTLY ASKED QUESTIONS

**Q: How do I file a proof of claim?**

A: Creditors will receive a Creditors Notice via US Mail or via Email. Please complete the form and submit it to: LeVecke (ABC), LLC, c/o Claims Administration, 231 Market Place, Suite 373, San Ramon, CA 94583. Include your company information, the total amount of your claim, invoice numbers, and (if multiple invoices) an accounts receivable summary or aging supporting the balance.

**Q: What is the claims filing deadline ("bar date")?**

A: Creditors will have until July 8, 2026 to file a claim following issuance of the claims notice.

**Q: Can I amend a filed claim?**

A: If you discover errors or additional information, you should submit an amended claim promptly and reference your original submission so the Assignee can reconcile the records.

**Q: What supporting documentation should I provide with my claim?**

A: Attach invoices, statements, purchase orders, contracts, and an accounts receivable aging (if the claim spans multiple invoices). Providing clear backup will expedite claim reconciliation.

**Q: Where should I send questions about my claim?**

A: Please direct questions to the Assignee using the contact details in your creditor notice. Mail pertaining to claims should be addressed to the claims administration address above.

**Q: What happens if a creditor does not file a claim?**

A: A creditor who does not file a claim may lose eligibility to receive any distribution from the ABC estate.

**Q: Are secured creditors treated differently?**

A: Yes. Secured creditors may recover first from their collateral. Only unsecured and deficiency claims participate in general distributions.

**Q: What is the priority of creditor payments?**

A: California law generally requires payment of administrative costs first, followed by priority claims, then unsecured claims on a pro-rata basis.

**Q: How will the assignee liquidate remaining assets?**

A: The assignee may sell assets through private sale, public auction, negotiated transactions, or other commercially reasonable methods.

**Q: Does the ABC stop collections or lawsuits?**

A: Generally, no. An ABC does not provide the same automatic stay as a bankruptcy case. The Assignee will nevertheless focus on an orderly administration and communicate with creditors throughout the process.

# FREQUENTLY ASKED QUESTIONS

Q: **How long does the ABC process take?**

A: Timing varies depending on the nature of the assets, claims reconciliation, and litigation (if any). Most ABCs take several months to over a year.

Q: **Will employees receive payment for wages or benefits?**

A: Employee wage claims may have statutory priority, up to legally defined limits.

Q: **What financial information will be provided to creditors?**

A: The assignee typically provides notices, asset information, claim forms, and periodic updates as required or appropriate.

Q: **Can creditors inspect the assignment documents?**

A: Yes. Creditors may request copies of the assignment agreement and related notices from the assignee.

Q: **Does the assignee investigate potential claims or recoveries?**

A: The assignee may investigate potential causes of action or asset recoveries if doing so could provide value to the estate.

Q: **How are tax matters handled?**

A: The assignee will file required tax returns for the estate and address tax matters related to asset sales.

Q: **Will creditors receive regular updates?**

A: Yes. The assignee provides notices and updates as material events occur in the administration of the estate.

Q: **Who should creditors contact with questions?**

A: Creditors may contact the assignee or its designated representative by email or phone as provided in the notices.

Q: **What happens when the ABC is complete?**

A: Once all assets are administered and proceeds distributed, the assignee will close the estate and issue a final report to creditors.

Q: **What should I do now?**

A: Watch for the official notice and claim form, submit a timely and well-supported claim by the stated deadline, and monitor updates from the Assignee. If you have counsel, you may wish to consult them regarding your specific rights.

## FREQUENTLY ASKED QUESTIONS

DISCLAIMER: The information provided on this platform is for general informational purposes only and does not constitute legal advice. It is not intended to create, and receipt of it does not constitute, an attorney-client relationship. You should not act upon any information provided without seeking professional legal counsel tailored to your specific situation. We recommend consulting with a qualified attorney for advice on any particular legal matter.

LEVECKE (ABC), LLC
231 MARKET PLACE, SUITE 373
SAN RAMON, CALIFORNIA 94583

January 27, 2026

To: Stockholders of LeVecke, Inc.

Subject: Assignment for Benefit of Creditors and Stockholder Distribution

As you are aware, on January 8, 2026 the board and stockholders of LeVecke, Inc. ("Company") approved an Assignment for Benefit of Creditors ("ABC") by assigning its assets to LeVecke (ABC), LLC ("Assignee"). The Assignee has liquidated all of the Company's assets and has reviewed all claims filed in the ABC which exceed the proceeds from the liquidation of the Company's assets. You should consult with your tax advisor regarding the tax ramifications of the ABC, but there are no funds available for a distribution to stockholders of LeVecke, Inc.

If you have any questions, please contact Juan Zertuche at Juan.Zertuche@armanino.com.

Regards,

Juan Zertuche

Juan Zertuche
Representative, LeVecke (ABC), LLC
in its sole and limited capacity as assignee
for the benefit of creditors of LeVecke, Inc.

# FREQUENTLY ASKED QUESTIONS

**Q: How do I file a proof of claim?**

A: Creditors will receive a Creditors Notice via US Mail or via Email. Please complete the form and submit it to: LeVecke (ABC), LLC, c/o Claims Administration, 231 Market Place, Suite 373, San Ramon, CA 94583. Include your company information, the total amount of your claim, invoice numbers, and (if multiple invoices) an accounts receivable summary or aging supporting the balance.

**Q: What is the claims filing deadline ("bar date")?**

A: Creditors will have until July 8, 2026 to file a claim following issuance of the claims notice.

**Q: Can I amend a filed claim?**

A: If you discover errors or additional information, you should submit an amended claim promptly and reference your original submission so the Assignee can reconcile the records.

**Q: What supporting documentation should I provide with my claim?**

A: Attach invoices, statements, purchase orders, contracts, and an accounts receivable aging (if the claim spans multiple invoices). Providing clear backup will expedite claim reconciliation.

**Q: Where should I send questions about my claim?**

A: Please direct questions to the Assignee using the contact details in your creditor notice. Mail pertaining to claims should be addressed to the claims administration address above.

**Q: What happens if a creditor does not file a claim?**

A: A creditor who does not file a claim may lose eligibility to receive any distribution from the ABC estate.

**Q: Are secured creditors treated differently?**

A: Yes. Secured creditors may recover first from their collateral. Only unsecured and deficiency claims participate in general distributions.

**Q: What is the priority of creditor payments?**

A: California law generally requires payment of administrative costs first, followed by priority claims, then unsecured claims on a pro-rata basis.

**Q: How will the assignee liquidate remaining assets?**

A: The assignee may sell assets through private sale, public auction, negotiated transactions, or other commercially reasonable methods.

**Q: Does the ABC stop collections or lawsuits?**

A: Generally, no. An ABC does not provide the same automatic stay as a bankruptcy case. The Assignee will nevertheless focus on an orderly administration and communicate with creditors throughout the process.

## FREQUENTLY ASKED QUESTIONS

**Q: How long does the ABC process take?**

A: Timing varies depending on the nature of the assets, claims reconciliation, and litigation (if any). Most ABCs take several months to over a year.

**Q: Will employees receive payment for wages or benefits?**

A: Employee wage claims may have statutory priority, up to legally defined limits.

**Q: What financial information will be provided to creditors?**

A: The assignee typically provides notices, asset information, claim forms, and periodic updates as required or appropriate.

**Q: Can creditors inspect the assignment documents?**

A: Yes. Creditors may request copies of the assignment agreement and related notices from the assignee.

**Q: Does the assignee investigate potential claims or recoveries?**

A: The assignee may investigate potential causes of action or asset recoveries if doing so could provide value to the estate.

**Q: How are tax matters handled?**

A: The assignee will file required tax returns for the estate and address tax matters related to asset sales.

**Q: Will creditors receive regular updates?**

A: Yes. The assignee provides notices and updates as material events occur in the administration of the estate.

**Q: Who should creditors contact with questions?**

A: Creditors may contact the assignee or its designated representative by email or phone as provided in the notices.

**Q: What happens when the ABC is complete?**

A: Once all assets are administered and proceeds distributed, the assignee will close the estate and issue a final report to creditors.

**Q: What should I do now?**

A: Watch for the official notice and claim form, submit a timely and well-supported claim by the stated deadline, and monitor updates from the Assignee. If you have counsel, you may wish to consult them regarding your specific rights.

## FREQUENTLY ASKED QUESTIONS

DISCLAIMER: The information provided on this platform is for general informational purposes only and does not constitute legal advice. It is not intended to create, and receipt of it does not constitute, an attorney-client relationship. You should not act upon any information provided without seeking professional legal counsel tailored to your specific situation. We recommend consulting with a qualified attorney for advice on any particular legal matter.

# GENERAL ASSIGNMENT

This General Assignment ("Assignment") is made as of January 8, 2026, by and between LeVecke Corporation, a California Corporation ("***Assignor***") and LeVecke (ABC), LLC, a California limited liability company ("***Assignee***"), with reference to the following:

## RECITALS

A. Assignor has its principal place of business at, 10810 Inland Avenue, Mira Loma, CA 91752, and its federal tax identification number is 95-2137173.

B. Assignor is indebted to various creditors and is unable to pay its debts in full, and is unable to satisfy its creditors, and has decided to discontinue its business and believes that transferring its property to an assignee for the benefit of creditors is in the best interest of its creditors and stockholders.

C. Assignee has its principal place of business in San Ramon, CA; and

D. This General Assignment has been approved by Assignor's Board of Directors and by the requisite vote of stockholders and shall not be effective until accepted by Assignee.

13 of F. 1D

## AGREEMENT

NOW, THEREFORE, Assignor, for valuable consideration, receipt of which is hereby acknowledged, does hereby make the following general assignment for the benefit of Assignor's creditors to Assignee under the following terms and conditions, all of which terms and conditions are agreed to by Assignor and Assignee:

1. Assignment of Assets. Subject to Sections 1.1 and 1.2, Assignor does hereby grant, assign, bargain, sell and transfer to Assignee, its successors and assigns, in trust, for the benefit of all the Assignor's creditors generally, all of the property and assets of Assignor of every kind and nature wherever situated, whether in possession, reversion, remainder or expectancy, both real and personal, and any interest or equity therein not exempt from the enforcement of a money judgment, including, without limitation, all inventory, merchandise, goods, furniture, fixtures, machinery, equipment, raw materials, work in process, accounts, general intangibles, intellectual property, deposits, books, records, fixtures, cash on hand, bank accounts, tax refunds, all choses in action, insurance policies and refunds and all other property of every kind and nature owned by Assignor, or in which Assignor has an interest (the "***Assignment Estate***"). Title to the personal property

assets of Assignor shall immediately vest in the Assignee for the use and purpose hereinafter set forth.

1.1 Lease Exclusion. Leases and leasehold interests in real property are not included in the Assignment Estate; provided, that, if the Assignee determines that such excluded lease or leasehold interest may be assigned and also that the same has realizable value for Assignor's creditors, then such excluded lease or leasehold interest shall be deemed to be included in the Assignment Estate and Assignor shall, upon demand of Assignee, assign and transfer such lease or leasehold interest to Assignee, or its nominee, for administration under the terms of this Assignment. Assignor hereby appoints Assignee as its attorney-in-fact for any and all matters concerning the termination of any real property leases.

1.2 Employee Benefit Plan Exclusion. Employee benefit plans (which includes any related employee trust fund), including, without limitation, any ERISA- qualified plan or other similar employee plan, are not included in the Assignment Estate. Assignee shall not be or deemed to be an administrator under any such employee benefit plan nor shall Assignee have any role in, or responsibility for, the termination of any employee benefit plan of Assignor and/or its employees.

2. Real Property Grant Deed. This Assignment constitutes a grant deed to all real property owned by Assignor (except for real property leases and leasehold interests which are expressly excepted from the Assignment Estate as provided in Section 1.1 above), whether or not the Assignor's real property is specifically described in this Assignment. Assignor hereby appoints Assignee as its attorney-in-fact for any and all matters concerning real property it owns and operates, including, but not limited to, marketing, sale, transfer or other disposition of its real property. Upon disposition of the real property, net proceeds, if any, shall immediately vest in the assignment estate as if it was personal property.

3. Delivery of Documents, Endorsements and Mail Delivery. Assignor agrees to deliver to Assignee all books of account and records of Assignee, to execute and deliver all additional necessary documents reasonably requested by Assignee, and to endorse all indicia of ownership as reasonably requested by Assignee, in order to complete the transfer of all assets to Assignee as intended by this Assignment, including, but not limited to, all of Assignor's real and personal property and/or Assignor's interest therein, including, mortgages, deeds of trust, motor vehicles, trademarks, copyrights and patent rights (but excluding real property leases and leasehold interests which are expressly excepted from the Assignment Estate as provided in Section 1.1 above). Neither Assignor, nor its agents, shall execute any documents on behalf of Assignor without prior written approval of Assignee. Assignee is hereby authorized to execute all endorsements and demands requiring Assignor's signature, in the name of Assignor, including endorsements on checks, bank accounts, deposit accounts, and stock certificates, payable to, or

standing in the name of Assignor. Assignor further authorizes Assignee to apply for any deposits, refunds (including specifically, among others, claims for refund of taxes paid or unearned insurance premiums) or claims wherever necessary, in the name of Assignor. Assignee is authorized to direct all Assignor's mail to be delivered to Assignee, and Assignee is expressly authorized and directed to open said mail as agent of Assignor, and to do anything or act which Assignee in its sole and arbitrary discretion deems necessary or advisable in any case to effectuate the purposes of this Assignment.

Licenses

4. Nature of Assignment. This instrument transfers legal title and possession of all of Assignor's assets in the Assignment Estate; provided, that this Assignment constitutes a transfer of only those assets that can be transferred legally and does not constitute a transfer of property that it is illegal to transfer. Assignee, in its sole discretion, may determine whether to continue all or a part of the business operations of Assignor or to liquidate Assignor's assets.

5. Disposition of Assets. Assignee, in its discretion, may sell and dispose of Assignor's assets upon such terms and conditions as it may see fit, at public or private sale, or otherwise. Assignee shall not be personally liable in any manner in connection with the performance of its duties and obligations hereunder except in the event of its gross negligence, willful misconduct or violation of law. Assignee's obligations hereunder shall be in a representative capacity only as an Assignee for the general benefit of Assignor's creditors. Assignee shall administer this estate to the best of its ability, and it is expressly understood that Assignee, and its agents, servants or employees, shall be liable only for reasonable care and diligence in the administration of the Assignment Estate. Assignee shall not be liable for any act or thing done by Assignee, its agents, servants, or employees in good faith in connection herewith. Assignee is not liable or responsible for any obligations of any nature whatsoever incurred at any time by Assignor, whether before or after the date of this Assignment. Assignee acknowledges and agrees that all of Assignee's actions in respect of Assignor's assets, property, rights and business shall be in furtherance of its duties as set forth herein.

6. Compensation of Assignee. From the proceeds of sales, collections, operations or other sources, Assignee shall receive reasonable compensation for its services and reimbursement of all its charges and expenses, including, but not limited to, reimbursement of attorneys' fees and other professional fees and costs, pursuant to that certain Compensation Agreement between the Assignor and the Assignee. Assignee shall also pay from the proceeds reasonable remuneration to its agents and, its attorneys and may pay a reasonable fee to Assignor's attorneys and other professionals for services related to the Assignment. Assignee may also pay from the proceeds resulting from the sale, disposition or other liquidation of Assignor's assets, the costs and expenses incurred by any creditor who may have levied an attachment or other lien on any assets of the Assignor.

7. Powers and Duties of Assignee. Assignee may compromise claims, complete or reject Assignor's executory contracts, and discharge, at its option, any liens on the assets covered by this Assignment and any indebtedness that, under law, is entitled to priority of payment. Assignee shall have the power to open bank accounts in the name of Assignee or its nominees and deposit assigned assets or proceeds thereof in such bank accounts and draw checks thereon, borrow money, hypothecate and pledge the assets, and to do all matters and things that Assignor could have done prior to this Assignment. Assignee shall have the power to employ auctioneers, attorneys, accountants and any other additional personnel to whatever extent may be necessary to administer the Assignment Estate and to assist in the preparation and filing of any and all state, county, local or Federal tax returns as required. Any act or thing done by Assignee hereunder shall bind the Assignment Estate and Assignee only in its capacity as Assignee for the benefit of creditors. Assignee shall have the right to sue as the successor of Assignor or Assignee is hereby given the right and power to institute and prosecute legal proceedings in the name of Assignor, the same as if the Assignor itself had instituted and prosecuted such proceedings or actions. Assignee is hereby authorized and has the right to defend all actions instituted against the Assignor and to appear on behalf of the Assignor in all proceedings (legal or otherwise) in which Assignor is a party. Assignor does hereby appoint Assignee as Assignor's attorney-in-fact, with full power of attorney to act for and in the place of Assignor in such actions or proceedings or in any other matters, including the right to verify, on behalf of Assignor, and with respect to all documents of any nature whatsoever, including all pleadings, which are part of any legal proceedings. Assignor does hereby grant to Assignee the right to act for, and in the place of, Assignor in any type of proceeding under title 11 of the United States Code, Sections 101 et seq. (the "***Bankruptcy Code***"), including the right to defend any petitions or actions filed against Assignor under the Bankruptcy Code.

8. Assignor's Duties as to Non-Assignable Tax or Other Refund Claims. Assignor agrees, to the extent that any tax or other refund claim is not assignable, to make any and all claims for refund of taxes or any other money due from any governmental agency for tax refunds, or otherwise, and to forthwith upon receipt of any such refunds, pay them over to Assignee, and hereby empowers Assignee, as attorney-in-fact of Assignor, to make all claims for refunds which may be made by an attorney-in-fact. This Assignment specifically includes and covers all claims for refund or abatement of all excess taxes heretofore or hereafter assessed against or collected from Assignor by the U.S. Treasury Department or any other taxing agency, and Assignor agrees to sign and execute power of attorney or such other documents as required to enable Assignee to file and prosecute, compromise and/or settle, all such claims before the Internal Revenue Service, U.S. Treasury Department or any other taxing or other Governmental agency.

9. Distributions. Assignee shall apply the net proceeds arising from or related to the liquidation of the Assignment Estate in the following priority as to amounts only and not time of distributions as follows:

A. First, to deduct all sums which Assignee may at its option pay for the discharge of any lien on any of said property and any indebtedness which under law is entitled to priority of payment and to reimburse Assignee as to all costs advanced by the Assignee or any third party for the preservation of the Assignment Estate's assets, including the maintenance and insurance of said assets and the expenses of any operation.

B. Second, all reasonable costs and expenses incidental to the administration of the Assignment Estate, including the payment of the remuneration and fee to the Assignee as set forth above and the payment of attorneys for the Assignee, accountants to the Assignee, and any other professionals the Assignee deems necessary to properly administer the Assignment Estate.

C. Third, all Federal taxes of any nature whatsoever owing as of the date of this Assignment, or such claim of any Federal governmental agency as defined under 31 U.S.C. §3713, including but not limited to, Federal withholding taxes, Federal unemployment taxes and any other Federal income, excise, property and employment taxes.

D. Fourth, all monies due employees of Assignor entitled to priority as defined under California state and local law up to the statutory maximum.

E. Fifth, all state, county and municipality taxes of any nature whatsoever owing as of the date of this Assignment, including but not limited to employment, property and income taxes.

F. Sixth, with the exception of those classes set forth above, all distributions to other creditors shall be, within each class, pro rata in accordance with the terms of each creditor's indebtedness, until all such debts are paid in full. The Assignee may, but is not required to, make interim distributions whenever the Assignee has accumulated sufficient funds to enable it to make a reasonable distribution.

G. Seventh, any monies unclaimed by creditors 90 days after the final distribution to unsecured creditors, if any, or the termination of the administration of the Assignment Estate by the Assignee, shall be re-

distributed at the Assignee's reasonable discretion, pro rata, to all known unsecured creditors, being those creditors who cashed their respective dividend checks from the Assignment Estate.

H. Finally, the surplus of the Assignment Estate's funds, if any, when all debts of the Assignment Estate shall have been paid in full, shall be distributed to the holders of the equity of Assignor by the Assignee in accordance with their rights.

10. Rights of Creditors. All rights and remedies of the creditors against any surety or sureties for Assignor are hereby expressly reserved, and nothing herein contained shall prevent the creditors or any of them from suing any third parties or persons who may be liable to any of the creditors for all or any part of their claims against Assignor, or from enforcing or otherwise obtaining the full benefit of any mortgage, charge, pledge, lien, or other security that they now hold on any property, credits, or effects of Assignor.

11. Administration of Assignment Estate. The Assignment Estate shall be administered out of court. The Assignee shall, however, have the right to ask any court of competent jurisdiction for a declaratory judgment or such other relief as the Assignee may deem necessary, if, in his opinion, said action is desirable in connection with any dispute or claim arising in the course of administration of the Assignment Estate.

12. Right to Withhold Payment of Contested Claims. In the event that Assignee contests the validity of a Claim[1] falling within any of the classifications set forth in Section 9 above, the Assignee may withhold the pro rata distribution (whether interim or final) to which the holder of such contested Claim would otherwise be entitled to receive until the allowance of the contested claim is determined by a Court of competent jurisdiction or by agreement with the Assignee.

13. Definition of Transaction. It is agreed and understood that this Assignment is a general assignment for the benefit of all of Assignor's creditors. This is general assignment for the benefit of creditors is made in accordance with, as set forth in, and defined in California Code of Civil Procedure, Section 493.010, and all other laws of the State of California pertaining thereto. This general assignment for the benefit of creditors (s) (a) does constitute an assignment to Assignee of all assets of Assignor which are transferable and not exempt from enforcement of a money judgment; (b) is an assignment for the benefit of all of the creditors of the Assignor; and

---

1 The term "Claim" for the purposes of this agreement shall mean a right to payment as defined in Section 101(5) of the Bankruptcy Code and the federal case law construing that statute.

(c) does not create a preference of one creditor or class of creditors over any other creditor or class of creditors.

14. Limitation of Liability. Assignor acknowledges that Assignee is acting solely as Assignee in connection with this Assignment and not in its personal capacity. As a result, Assignor expressly agrees that Assignee, its members, officers and agents shall not be subject to any personal liability whatsoever to any person in connection with the affairs of this Assignment, except for its own misconduct knowingly and intentionally committed in bad faith, by gross negligence or in violation of law. No provision of this Agreement shall be construed to relieve the Assignee from liability for its own misconduct knowingly and intentionally committed in bad faith, by gross negligence or violation of law except that:

A. The Assignee shall not be required to perform any duties or obligations except for the performance of such duties and obligations as are specifically set forth in this Assignment, and no implied covenants or obligations shall be read into this Assignment against the Assignee. In the absence of bad faith on the part of the Assignee, the Assignee may conclusively rely, as to the truth, accuracy and completeness thereof, on the statements and certificates or opinions furnished to the Assignee by the Assignor and conforming to the requirements of this Assignment. The Assignee shall not be liable for any error of judgment made in good faith. The Assignee shall not be liable with respect to any action taken or omitted to be taken by it in accordance with a written opinion of legal counsel addressed to the Assignee.

B. In connection with the foregoing, the Assignment Estate shall defend, indemnify and hold the Assignee and its past and present officers, members, managers, directors, employees, counsel, agents, attorneys, parent, subsidiaries, affiliates, successors and assigns, including without limitation Armanino Advisory, LLC (collectively, the "***Assignment Estate Indemnified Persons***") harmless from and against any and all Indemnified Claims (defined below); provided, however, that the Assignment Estate shall have no obligation hereunder to any Assignment Estate Indemnified Person with respect to any Indemnified Claims to the extent resulting from the willful misconduct, gross negligence or violation of law of any Assignment Estate Indemnified Person.

C. The foregoing indemnification provisions shall survive any termination of this Assignment or the transactions contemplated hereby.

D. For purposes hereof, "Indemnified Claims" means any and all claims, demands, actions, causes of action, judgments, obligations, liabilities, losses, damages and consequential damages, penalties, fines, costs, fees, expenses and disbursements (including without limitation, fees and expenses of attorneys and other professional consultants and experts in connection with investigation or defense) of every kind, known or unknown, existing or hereafter arising, foreseeable or unforeseeable, which may be imposed upon, threatened or asserted against, or incurred or paid by, any Assignment Estate Indemnified Person or Assignee Indemnified Person, as applicable, at any time and from time to time, because of, resulting from, in connection with, or arising out of this Assignment, the transactions contemplated hereby, including but not limited to economic loss, property damage, personal injury or death in connection with, or occurring on or in the vicinity of, any assets of the Assignment Estate through any cause whatsoever, any act performed or omitted to be performed under this Assignment, the transactions contemplated hereby, or any breach by Assignor or Assignee, as applicable, of any representation, warranty, covenant, agreement or condition contained herein.

**THIS DOCUMENT IS EXECUTED BY THE ASSIGNEE, NOT PERSONALLY, BUT SOLELY AS THE ASSIGNEE UNDER THE ASSIGNMENT FOR THE BENEFIT OF CREDITORS OF ASSIGNOR, IN THE EXERCISE OF THE POWER AND AUTHORITY CONFERRED AND VESTED IN IT AS SUCH ASSIGNEE, AND IT IS EXPRESSLY UNDERSTOOD AND AGREED BY EVERY PARTY HERETO AND BY EVERY PERSON NOW OR HEREAFTER CLAIMING ANY RIGHT OR INTEREST HEREUNDER THAT NOTHING CONTAINED HEREIN SHALL BE CONSTRUED AS CREATING ANY PERSONAL LIABILITY ON THE ASSIGNEE OR ON ANY OF ITS AGENTS UNDER SAID ASSIGNMENT. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ASSIGNEE IN ITS INDIVIDUAL CAPACITY SHALL HAVE NO LIABILITY FOR BREACH OF ANY REPRESENTATION WARRANTY OR COVENANT UNDER THIS ASSIGNMENT AND EVERY PARTY HERETO AND EVERY PERSON NOW OR HEREAFTER CLAIMING ANY RIGHT OR INTEREST HEREUNDER AFTER HEREBY AGREES NOT TO ASSERT ANY SUCH CLAIM FOR ANY REASON WHATSOEVER AGAINST ASSIGNEE IN ITS INDIVIDUAL CAPACITY AND AGREES THAT ITS SOLE RECOURSE UNDER OR IN CONNECTION WITH THIS ASSIGNMENT SHALL BE LIMITED SOLELY TO THE ASSETS OF THE ASSIGNMENT ESTATE.**

15. Representations and Warranties of Assignor. Assignor represents and warrants Assignee that as of the date hereof:

A. To the best of Assignor's knowledge, the list of creditors delivered concurrently to the Assignee is complete and correct in all material respects and are as reflected by the books and records of Assignor as to names of said creditors, their addresses, and the amounts due them.

B. Assignor has all requisite power and authority to execute, deliver and perform its obligations under this Assignment, including, without limitation, to transfer the property transferred to the Assignee hereby.

C. The execution, delivery and performance by the Assignor of this Assignment has been duly authorized by all necessary corporate and other action and does not and will not require any registration with, consent or approval of, or notice to or action by, any person (including any governmental authority) in order to be effective and enforceable.

D. This Assignment constitutes the legal, valid and binding obligation of the Assignor, enforceable against it in accordance with their respective terms.

E. Whenever reasonably requested by the Assignee, Assignor shall execute and deliver documents and instruments that are necessary or convenient for the Assignee to carry out his duties under the Assignment.

16. Entire Agreement. This Assignment supersedes all prior discussions and agreements between the parties with respect to the subject matter hereof and thereof and contains the sole and entire agreement between the parties hereto with respect to the subject matter hereof and thereof.

17. Headings. The headings used in this Assignment have been inserted for convenience of reference only and do not define or limit the provisions hereof.

18. Invalid Provisions. If any provision of this Assignment is held to be illegal, invalid or unenforceable under any present or future law, and if the rights or obligations of any party hereto under this Assignment will not be materially and adversely affected thereby, (a) such provision will be fully severable, (b) this Assignment will be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part hereof and (c) the remaining provisions of this Assignment will remain in full force and effect and will not be affected by the illegal, invalid or unenforceable provision or by its severance here from.

19. Governing Law. This Agreement shall be governed by and construed in accordance with the Laws of the State of California applicable to a contract executed and performed in such State, without giving effect to the conflicts of laws principles thereof.

20. Counterparts. This Assignment may be executed in any number of counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument.

21. Acceptance by Trustee/Assignee. As evidenced by signature below, the Assignee does hereby accept the Assignment herein created and agrees to faithfully perform the same according to the best of Assignee's skill, knowledge and ability. It is understood that Assignee shall receive reasonable compensation for its services rendered in connection with this Assignment.

LeVecke Corporation, a California Corporation, Assignor

By: /s/ Joseph R. LeVecke
Joseph R. LeVecke
Its: President

Accepted by Assignee on January 8, 2026.

LeVecke (ABC), LLC, a California Limited Liability Company, Assignee

By: /s/ Michael Hogan
Michael Hogan
Its: Manager

# GENERAL ASSIGNMENT

This General Assignment ("Assignment") is made as of January 8, 2026, by and between LeVecke Corporation, a California Corporation ("***Assignor***") and LeVecke (ABC), LLC, a California limited liability company ("***Assignee***"), with reference to the following:

## RECITALS

A. Assignor has its principal place of business at, 10810 Inland Avenue, Mira Loma, CA 91752, and its federal tax identification number is 95-2137173.

B. Assignor is indebted to various creditors and is unable to pay its debts in full, and is unable to satisfy its creditors, and has decided to discontinue its business and believes that transferring its property to an assignee for the benefit of creditors is in the best interest of its creditors and stockholders.

C. Assignee has its principal place of business in San Ramon, CA; and

D. This General Assignment has been approved by Assignor's Board of Directors and by the requisite vote of stockholders and shall not be effective until accepted by Assignee.

## AGREEMENT

NOW, THEREFORE, Assignor, for valuable consideration, receipt of which is hereby acknowledged, does hereby make the following general assignment for the benefit of Assignor's creditors to Assignee under the following terms and conditions, all of which terms and conditions are agreed to by Assignor and Assignee:

1. Assignment of Assets. Subject to Sections 1.1 and 1.2, Assignor does hereby grant, assign, bargain, sell and transfer to Assignee, its successors and assigns, in trust, for the benefit of all the Assignor's creditors generally, all of the property and assets of Assignor of every kind and nature wherever situated, whether in possession, reversion, remainder or expectancy, both real and personal, and any interest or equity therein not exempt from the enforcement of a money judgment, including, without limitation, all inventory, merchandise, goods, furniture, fixtures, machinery, equipment, raw materials, work in process, accounts, general intangibles, intellectual property, deposits, books, records, fixtures, cash on hand, bank accounts, tax refunds, all choses in action, insurance policies and refunds and all other property of every kind and nature owned by Assignor, or in which Assignor has an interest (the "***Assignment Estate***"). Title to the personal property

assets of Assignor shall immediately vest in the Assignee for the use and purpose hereinafter set forth.

1.1 Lease Exclusion. Leases and leasehold interests in real property are not included in the Assignment Estate; provided, that, if the Assignee determines that such excluded lease or leasehold interest may be assigned and also that the same has realizable value for Assignor's creditors, then such excluded lease or leasehold interest shall be deemed to be included in the Assignment Estate and Assignor shall, upon demand of Assignee, assign and transfer such lease or leasehold interest to Assignee, or its nominee, for administration under the terms of this Assignment. Assignor hereby appoints Assignee as its attorney-in-fact for any and all matters concerning the termination of any real property leases.

1.2 Employee Benefit Plan Exclusion. Employee benefit plans (which includes any related employee trust fund), including, without limitation, any ERISA- qualified plan or other similar employee plan, are not included in the Assignment Estate. Assignee shall not be or deemed to be an administrator under any such employee benefit plan nor shall Assignee have any role in, or responsibility for, the termination of any employee benefit plan of Assignor and/or its employees.

2. Real Property Grant Deed. This Assignment constitutes a grant deed to all real property owned by Assignor (except for real property leases and leasehold interests which are expressly excepted from the Assignment Estate as provided in Section 1.1 above), whether or not the Assignor's real property is specifically described in this Assignment. Assignor hereby appoints Assignee as its attorney-in-fact for any and all matters concerning real property it owns and operates, including, but not limited to, marketing, sale, transfer or other disposition of its real property. Upon disposition of the real property, net proceeds, if any, shall immediately vest in the assignment estate as if it was personal property.

3. Delivery of Documents, Endorsements and Mail Delivery. Assignor agrees to deliver to Assignee all books of account and records of Assignee, to execute and deliver all additional necessary documents reasonably requested by Assignee, and to endorse all indicia of ownership as reasonably requested by Assignee, in order to complete the transfer of all assets to Assignee as intended by this Assignment, including, but not limited to, all of Assignor's real and personal property and/or Assignor's interest therein, including, mortgages, deeds of trust, motor vehicles, trademarks, copyrights and patent rights (but excluding real property leases and leasehold interests which are expressly excepted from the Assignment Estate as provided in Section 1.1 above). Neither Assignor, nor its agents, shall execute any documents on behalf of Assignor without prior written approval of Assignee. Assignee is hereby authorized to execute all endorsements and demands requiring Assignor's signature, in the name of Assignor, including endorsements on checks, bank accounts, deposit accounts, and stock certificates, payable to, or

standing in the name of Assignor. Assignor further authorizes Assignee to apply for any deposits, refunds (including specifically, among others, claims for refund of taxes paid or unearned insurance premiums) or claims wherever necessary, in the name of Assignor. Assignee is authorized to direct all Assignor's mail to be delivered to Assignee, and Assignee is expressly authorized and directed to open said mail as agent of Assignor, and to do anything or act which Assignee in its sole and arbitrary discretion deems necessary or advisable in any case to effectuate the purposes of this Assignment.

4. Nature of Assignment. This instrument transfers legal title and possession of all of Assignor's assets in the Assignment Estate; provided, that this Assignment constitutes a transfer of only those assets that can be transferred legally and does not constitute a transfer of property that it is illegal to transfer. Assignee, in its sole discretion, may determine whether to continue all or a part of the business operations of Assignor or to liquidate Assignor's assets.

5. Disposition of Assets. Assignee, in its discretion, may sell and dispose of Assignor's assets upon such terms and conditions as it may see fit, at public or private sale, or otherwise. Assignee shall not be personally liable in any manner in connection with the performance of its duties and obligations hereunder except in the event of its gross negligence, willful misconduct or violation of law. Assignee's obligations hereunder shall be in a representative capacity only as an Assignee for the general benefit of Assignor's creditors. Assignee shall administer this estate to the best of its ability, and it is expressly understood that Assignee, and its agents, servants or employees, shall be liable only for reasonable care and diligence in the administration of the Assignment Estate. Assignee shall not be liable for any act or thing done by Assignee, its agents, servants, or employees in good faith in connection herewith. Assignee is not liable or responsible for any obligations of any nature whatsoever incurred at any time by Assignor, whether before or after the date of this Assignment. Assignee acknowledges and agrees that all of Assignee's actions in respect of Assignor's assets, property, rights and business shall be in furtherance of its duties as set forth herein.

6. Compensation of Assignee. From the proceeds of sales, collections, operations or other sources, Assignee shall receive reasonable compensation for its services and reimbursement of all its charges and expenses, including, but not limited to, reimbursement of attorneys' fees and other professional fees and costs, pursuant to that certain Compensation Agreement between the Assignor and the Assignee. Assignee shall also pay from the proceeds reasonable remuneration to its agents and, its attorneys and may pay a reasonable fee to Assignor's attorneys and other professionals for services related to the Assignment. Assignee may also pay from the proceeds resulting from the sale, disposition or other liquidation of Assignor's assets, the costs and expenses incurred by any creditor who may have levied an attachment or other lien on any assets of the Assignor.

7. Powers and Duties of Assignee. Assignee may compromise claims, complete or reject Assignor's executory contracts, and discharge, at its option, any liens on the assets covered by this Assignment and any indebtedness that, under law, is entitled to priority of payment. Assignee shall have the power to open bank accounts in the name of Assignee or its nominees and deposit assigned assets or proceeds thereof in such bank accounts and draw checks thereon, borrow money, hypothecate and pledge the assets, and to do all matters and things that Assignor could have done prior to this Assignment. Assignee shall have the power to employ auctioneers, attorneys, accountants and any other additional personnel to whatever extent may be necessary to administer the Assignment Estate and to assist in the preparation and filing of any and all state, county, local or Federal tax returns as required. Any act or thing done by Assignee hereunder shall bind the Assignment Estate and Assignee only in its capacity as Assignee for the benefit of creditors. Assignee shall have the right to sue as the successor of Assignor or Assignee is hereby given the right and power to institute and prosecute legal proceedings in the name of Assignor, the same as if the Assignor itself had instituted and prosecuted such proceedings or actions. Assignee is hereby authorized and has the right to defend all actions instituted against the Assignor and to appear on behalf of the Assignor in all proceedings (legal or otherwise) in which Assignor is a party. Assignor does hereby appoint Assignee as Assignor's attorney-in-fact, with full power of attorney to act for and in the place of Assignor in such actions or proceedings or in any other matters, including the right to verify, on behalf of Assignor, and with respect to all documents of any nature whatsoever, including all pleadings, which are part of any legal proceedings. Assignor does hereby grant to Assignee the right to act for, and in the place of, Assignor in any type of proceeding under title 11 of the United States Code, Sections 101 et seq. (the "***Bankruptcy Code***"), including the right to defend any petitions or actions filed against Assignor under the Bankruptcy Code.

8. Assignor's Duties as to Non-Assignable Tax or Other Refund Claims. Assignor agrees, to the extent that any tax or other refund claim is not assignable, to make any and all claims for refund of taxes or any other money due from any governmental agency for tax refunds, or otherwise, and to forthwith upon receipt of any such refunds, pay them over to Assignee, and hereby empowers Assignee, as attorney-in-fact of Assignor, to make all claims for refunds which may be made by an attorney-in-fact. This Assignment specifically includes and covers all claims for refund or abatement of all excess taxes heretofore or hereafter assessed against or collected from Assignor by the U.S. Treasury Department or any other taxing agency, and Assignor agrees to sign and execute power of attorney or such other documents as required to enable Assignee to file and prosecute, compromise and/or settle, all such claims before the Internal Revenue Service, U.S. Treasury Department or any other taxing or other Governmental agency.

9. Distributions. Assignee shall apply the net proceeds arising from or related to the liquidation of the Assignment Estate in the following priority as to amounts only and not time of distributions as follows:

A. First, to deduct all sums which Assignee may at its option pay for the discharge of any lien on any of said property and any indebtedness which under law is entitled to priority of payment and to reimburse Assignee as to all costs advanced by the Assignee or any third party for the preservation of the Assignment Estate's assets, including the maintenance and insurance of said assets and the expenses of any operation.

B. Second, all reasonable costs and expenses incidental to the administration of the Assignment Estate, including the payment of the remuneration and fee to the Assignee as set forth above and the payment of attorneys for the Assignee, accountants to the Assignee, and any other professionals the Assignee deems necessary to properly administer the Assignment Estate.

C. Third, all Federal taxes of any nature whatsoever owing as of the date of this Assignment, or such claim of any Federal governmental agency as defined under 31 U.S.C. §3713, including but not limited to, Federal withholding taxes, Federal unemployment taxes and any other Federal income, excise, property and employment taxes.

D. Fourth, all monies due employees of Assignor entitled to priority as defined under California state and local law up to the statutory maximum.

E. Fifth, all state, county and municipality taxes of any nature whatsoever owing as of the date of this Assignment, including but not limited to employment, property and income taxes.

F. Sixth, with the exception of those classes set forth above, all distributions to other creditors shall be, within each class, pro rata in accordance with the terms of each creditor's indebtedness, until all such debts are paid in full. The Assignee may, but is not required to, make interim distributions whenever the Assignee has accumulated sufficient funds to enable it to make a reasonable distribution.

G. Seventh, any monies unclaimed by creditors 90 days after the final distribution to unsecured creditors, if any, or the termination of the administration of the Assignment Estate by the Assignee, shall be re-

distributed at the Assignee's reasonable discretion, pro rata, to all known unsecured creditors, being those creditors who cashed their respective dividend checks from the Assignment Estate.

H. Finally, the surplus of the Assignment Estate's funds, if any, when all debts of the Assignment Estate shall have been paid in full, shall be distributed to the holders of the equity of Assignor by the Assignee in accordance with their rights.

10. Rights of Creditors. All rights and remedies of the creditors against any surety or sureties for Assignor are hereby expressly reserved, and nothing herein contained shall prevent the creditors or any of them from suing any third parties or persons who may be liable to any of the creditors for all or any part of their claims against Assignor, or from enforcing or otherwise obtaining the full benefit of any mortgage, charge, pledge, lien, or other security that they now hold on any property, credits, or effects of Assignor.

11. Administration of Assignment Estate. The Assignment Estate shall be administered out of court. The Assignee shall, however, have the right to ask any court of competent jurisdiction for a declaratory judgment or such other relief as the Assignee may deem necessary, if, in his opinion, said action is desirable in connection with any dispute or claim arising in the course of administration of the Assignment Estate.

12. Right to Withhold Payment of Contested Claims. In the event that Assignee contests the validity of a Claim[1] falling within any of the classifications set forth in Section 9 above, the Assignee may withhold the pro rata distribution (whether interim or final) to which the holder of such contested Claim would otherwise be entitled to receive until the allowance of the contested claim is determined by a Court of competent jurisdiction or by agreement with the Assignee.

13. Definition of Transaction. It is agreed and understood that this Assignment is a general assignment for the benefit of all of Assignor's creditors. This is general assignment for the benefit of creditors is made in accordance with, as set forth in, and defined in California Code of Civil Procedure, Section 493.010, and all other laws of the State of California pertaining thereto. This general assignment for the benefit of creditors (s) (a) does constitute an assignment to Assignee of all assets of Assignor which are transferable and not exempt from enforcement of a money judgment; (b) is an assignment for the benefit of all of the creditors of the Assignor; and

---

1 The term "Claim" for the purposes of this agreement shall mean a right to payment as defined in Section 101(5) of the Bankruptcy Code and the federal case law construing that statute.

(c) does not create a preference of one creditor or class of creditors over any other creditor or class of creditors.

14. Limitation of Liability. Assignor acknowledges that Assignee is acting solely as Assignee in connection with this Assignment and not in its personal capacity. As a result, Assignor expressly agrees that Assignee, its members, officers and agents shall not be subject to any personal liability whatsoever to any person in connection with the affairs of this Assignment, except for its own misconduct knowingly and intentionally committed in bad faith, by gross negligence or in violation of law. No provision of this Agreement shall be construed to relieve the Assignee from liability for its own misconduct knowingly and intentionally committed in bad faith, by gross negligence or violation of law except that:

A. The Assignee shall not be required to perform any duties or obligations except for the performance of such duties and obligations as are specifically set forth in this Assignment, and no implied covenants or obligations shall be read into this Assignment against the Assignee. In the absence of bad faith on the part of the Assignee, the Assignee may conclusively rely, as to the truth, accuracy and completeness thereof, on the statements and certificates or opinions furnished to the Assignee by the Assignor and conforming to the requirements of this Assignment. The Assignee shall not be liable for any error of judgment made in good faith. The Assignee shall not be liable with respect to any action taken or omitted to be taken by it in accordance with a written opinion of legal counsel addressed to the Assignee.

B. In connection with the foregoing, the Assignment Estate shall defend, indemnify and hold the Assignee and its past and present officers, members, managers, directors, employees, counsel, agents, attorneys, parent, subsidiaries, affiliates, successors and assigns, including without limitation Armanino Advisory, LLC (collectively, the "***Assignment Estate Indemnified Persons***") harmless from and against any and all Indemnified Claims (defined below); provided, however, that the Assignment Estate shall have no obligation hereunder to any Assignment Estate Indemnified Person with respect to any Indemnified Claims to the extent resulting from the willful misconduct, gross negligence or violation of law of any Assignment Estate Indemnified Person.

C. The foregoing indemnification provisions shall survive any termination of this Assignment or the transactions contemplated hereby.

D. For purposes hereof, "Indemnified Claims" means any and all claims, demands, actions, causes of action, judgments, obligations, liabilities, losses, damages and consequential damages, penalties, fines, costs, fees, expenses and disbursements (including without limitation, fees and expenses of attorneys and other professional consultants and experts in connection with investigation or defense) of every kind, known or unknown, existing or hereafter arising, foreseeable or unforeseeable, which may be imposed upon, threatened or asserted against, or incurred or paid by, any Assignment Estate Indemnified Person or Assignee Indemnified Person, as applicable, at any time and from time to time, because of, resulting from, in connection with, or arising out of this Assignment, the transactions contemplated hereby, including but not limited to economic loss, property damage, personal injury or death in connection with, or occurring on or in the vicinity of, any assets of the Assignment Estate through any cause whatsoever, any act performed or omitted to be performed under this Assignment, the transactions contemplated hereby, or any breach by Assignor or Assignee, as applicable, of any representation, warranty, covenant, agreement or condition contained herein.

**THIS DOCUMENT IS EXECUTED BY THE ASSIGNEE, NOT PERSONALLY, BUT SOLELY AS THE ASSIGNEE UNDER THE ASSIGNMENT FOR THE BENEFIT OF CREDITORS OF ASSIGNOR, IN THE EXERCISE OF THE POWER AND AUTHORITY CONFERRED AND VESTED IN IT AS SUCH ASSIGNEE, AND IT IS EXPRESSLY UNDERSTOOD AND AGREED BY EVERY PARTY HERETO AND BY EVERY PERSON NOW OR HEREAFTER CLAIMING ANY RIGHT OR INTEREST HEREUNDER THAT NOTHING CONTAINED HEREIN SHALL BE CONSTRUED AS CREATING ANY PERSONAL LIABILITY ON THE ASSIGNEE OR ON ANY OF ITS AGENTS UNDER SAID ASSIGNMENT. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ASSIGNEE IN ITS INDIVIDUAL CAPACITY SHALL HAVE NO LIABILITY FOR BREACH OF ANY REPRESENTATION WARRANTY OR COVENANT UNDER THIS ASSIGNMENT AND EVERY PARTY HERETO AND EVERY PERSON NOW OR HEREAFTER CLAIMING ANY RIGHT OR INTEREST HEREUNDER AFTER HEREBY AGREES NOT TO ASSERT ANY SUCH CLAIM FOR ANY REASON WHATSOEVER AGAINST ASSIGNEE IN ITS INDIVIDUAL CAPACITY AND AGREES THAT ITS SOLE RECOURSE UNDER OR IN CONNECTION WITH THIS ASSIGNMENT SHALL BE LIMITED SOLELY TO THE ASSETS OF THE ASSIGNMENT ESTATE.**

15. <u>Representations and Warranties of Assignor</u>. Assignor represents and warrants Assignee that as of the date hereof:

A. To the best of Assignor's knowledge, the list of creditors delivered concurrently to the Assignee is complete and correct in all material respects and are as reflected by the books and records of Assignor as to names of said creditors, their addresses, and the amounts due them.

B. Assignor has all requisite power and authority to execute, deliver and perform its obligations under this Assignment, including, without limitation, to transfer the property transferred to the Assignee hereby.

C. The execution, delivery and performance by the Assignor of this Assignment has been duly authorized by all necessary corporate and other action and does not and will not require any registration with, consent or approval of, or notice to or action by, any person (including any governmental authority) in order to be effective and enforceable.

D. This Assignment constitutes the legal, valid and binding obligation of the Assignor, enforceable against it in accordance with their respective terms.

E. Whenever reasonably requested by the Assignee, Assignor shall execute and deliver documents and instruments that are necessary or convenient for the Assignee to carry out his duties under the Assignment.

16. Entire Agreement. This Assignment supersedes all prior discussions and agreements between the parties with respect to the subject matter hereof and thereof and contains the sole and entire agreement between the parties hereto with respect to the subject matter hereof and thereof.

17. Headings. The headings used in this Assignment have been inserted for convenience of reference only and do not define or limit the provisions hereof.

18. Invalid Provisions. If any provision of this Assignment is held to be illegal, invalid or unenforceable under any present or future law, and if the rights or obligations of any party hereto under this Assignment will not be materially and adversely affected thereby, (a) such provision will be fully severable, (b) this Assignment will be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part hereof and (c) the remaining provisions of this Assignment will remain in full force and effect and will not be affected by the illegal, invalid or unenforceable provision or by its severance here from.

19. Governing Law. This Agreement shall be governed by and construed in accordance with the Laws of the State of California applicable to a contract executed and performed in such State, without giving effect to the conflicts of laws principles thereof.

20. Counterparts. This Assignment may be executed in any number of counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument.

21. Acceptance by Trustee/Assignee. As evidenced by signature below, the Assignee does hereby accept the Assignment herein created and agrees to faithfully perform the same according to the best of Assignee's skill, knowledge and ability. It is understood that Assignee shall receive reasonable compensation for its services rendered in connection with this Assignment.

LeVecke Corporation, a California Corporation, Assignor

By: /s/ Joseph R. LeVecke
Joseph R. LeVecke
Its: President

Accepted by Assignee on January 8, 2026.

LeVecke (ABC), LLC, a California Limited Liability Company, Assignee

By: /s/ Michael Hogan
Michael Hogan
Its: Manager